ALICE M. BATCHELDER, Chief Judge,
dissenting.
Some 35 years ago, the Michigan state legislature determined that a criminal defendant accused of rape may not introduce *293 evidence about the victim’s past sexual behavior, because the victim’s past willingness is not relevant to the question of present consent. The majority here disagrees with that legislative determination and concludes that evidence of the victim’s promiscuity or previous willingness to engage in somewhat similar sex acts was not only relevant but was “indispensable” and “the most relevant evidence.” Moreover, because this appeal arises in the context of a habeas proceeding, the majority ultimately holds that the rape defendant has a “constitutionally protected” and “clearly established” right to introduce this evidence. In so holding, the majority effectively abrogates every rape-shield statute in this circuit.[1] I do not believe that there is any such constitutional right to present evidence of a rape victim’s promiscuity or past willingness to engage in sex acts, nor do I believe that the majority is justified in its condemnation of the rape-shield concept. I dissent.
A.
In concluding its analysis, and justifying its grant of habeas relief, the majority cites Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), as the “clearly established law” that the Michigan Court of Appeals “unreasonably applied.” See Maj. Op. at 289 (“We therefore conclude that the state appellate court’s determination on this issue was an unreasonable application of the principles set forth by the Supreme Court in Crane.”). The majority offers the following exposition of those “principles”:
Crane makes clear that a proper inquiry into the constitutionality of a court’s decision to exclude evidence begins with considering the relevancy and cumulative nature of the excluded evidence, and the extent to which it was ‘central’ or ‘indispensable’ to the defense. Against this courts must balance the state’s interests in enforcing the evidentiary rule on which the exclusion was based, in this case Michigan’s rape shield statute.
Maj. Op. at 284 (underlining added) (citing Crane, 476 U.S. at 691, 106 S.Ct. 2142). So, according to the majority, Crane stands for the clear proposition that if a defendant accused of rape can show that evidence of the rape victim’s promiscuity or prior willingness to perform sex acts is “highly relevant, non-cumulative, and indispensable to the central dispute in a criminal trial,” then that defendant has a constitutional right to “put [that evidence] before the jury.” Maj. Op. at 288.
I cannot accept this proposition. Foremost, I do not agree with its constitutional premise. That is, in light of Michigan v. Lucas, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), I do not believe that there is any such constitutional right. But, even if I am mistaken in my reading of Lucas, I cannot agree that this proposition was — or, indeed, is now — “clearly established” as Supreme Court precedent, and I do not agree that such a liberal extension of Crane is justified (or justifiable). Moreover, I cannot agree that the Michigan Court of Appeals’s application of these governing principles (such as they are) was “objectively unreasonable.” Finally, I am simply unwilling to sanction the inevitable, albeit unacknowledged, consequence of this decision — that rape-shield statutes are ipso facto unconstitutional, inasmuch as their very purpose is to exclude, on policy grounds, evidence that is almost *294 always “highly relevant, non-cumulative, and indispensable to the central dispute in a criminal trial.”
1.
In Lucas, 500 U.S. at 147, 111 S.Ct. 1743, the Michigan prosecutor charged Nolan Lucas with criminal sexual conduct based on his ex-girlfriend’s accusation that he forced her to his apartment at knife point and forced her to perform various sex acts against her will. Id. at 147, 111 S.Ct. 1743. Lucas and the ex-girlfriend had ended a six-to-seven month relationship just two weeks earlier and Lucas insisted that the entire episode was consensual, that he had not used a knife or any other force. See Michigan v. Lucas, 160 Mich.App. 692, 408 N.W.2d 431, 431-32 (1987). At trial, the ex-girlfriend claimed rape and Lucas claimed consent. See Michigan v. Lucas, 469 N.W.2d 435, 436 (Mich.App.1991) (“Virtually all of the evidence in this case consisted of complainant’s word against the word of defendant.”).
At trial, Lucas’s counsel sought to introduce testimony regarding the couple’s relationship — specifically, their sexual history — as evidence of consent, but the state objected on the basis that defense counsel had not given prior notice of its intent to use that evidence, as was required by the Michigan rape-shield statute, M.C.L. § 750.520j. See Lucas, 500 U.S. at 147, 111 S.Ct. 1743. The trial court agreed that Lucas’s counsel had failed to comply with the notice provision of the rape-shield statute and refused to admit the evidence. Id. at 148, 111 S.Ct. 1743.
After being convicted and sentenced, Lucas appealed. Id. The Michigan Court of Appeals vacated the conviction, holding “that the [Michigan rape-shield statutej’s notice-and-hearing requirement is unconstitutional in all cases where it is used to preclude evidence of past sexual conduct between a rape victim and a criminal defendant.” Id. The United State Supreme Court granted certiorari to decide this constitutional question and ultimately concluded:
[T]he Michigan Court of Appeals erred in adopting a per se rule that Michigan’s notice-and-hearing requirement violates the Sixth Amendment in all cases where it is used to preclude evidence of past sexual conduct between a rape victim and a defendant. The Sixth Amendment is not so rigid. The notice-and-hearing requirement serves legitimate state interests in protecting against surprise, harassment, and undue delay. Failure to comply with this requirement may in some cases justify even the severe sanction of preclusion.
Id. at 152-53, 111 S.Ct. 1743. The Supreme Court vacated the judgment and remanded the case, stating:
We leave it to the Michigan courts to address in the first instance whether Michigan’s rape-shield statute authorizes preclusion and whether, on the facts of this case, preclusion violated Lucas’ rights under the Sixth Amendment.
Id. at 153, 111 S.Ct. 1743. So, the Supreme Court expressly did not decide the preclusion question, which is the question before us here. And, the inescapable consequence of this won-decision — the avoidance of this particular question — is that the Court has not articulated any “clearly established” law on this issue.
In the present case, however, the Michigan courts did consider whether Michigan’s rape-shield statute authorizes preclusion and determined, on the facts of this ease, that preclusion of certain testimony concerning Ms. Clark’s alleged prior sexual activities did not violate defendant Gagne’s rights under the Sixth Amend *295 ment. Because the Lucas Court had left this issue unresolved, Lucas offers little direct guidance on this issue (i.e., Lucas did not “clearly establish” any law on this particular issue), but it certainly offers some guidance, the most telling of which comes from what it did not hold.
The Lucas Court did not hold what the majority holds today — that a defendant has a constitutional right to put evidence before the jury because the evidence was highly relevant, non-cumulative, and indispensable to the central dispute. If the evidence at issue in the present case was highly relevant, non-cumulative, and indispensable to the central dispute, then the evidence in Lucas was equally or more so. In the present case, the evidence concerned the victim’s alleged willingness to participate in a particular sexual practice on at least two prior occasions; in Lucas, the evidence concerned the victim’s six-to-seven month relationship with the defendant, the emotional, physical, and sexual nature of their relationship, and the patterns and practices incident thereto. If the former is “highly relevant,” then so must be the latter. In the present case, the court excluded two incidents of prior sexual activities, but admitted testimony about three others; in Lucas, the court excluded any reference whatsoever to the prior sexual relationship. If the former is “non-cumulative,” so must be the latter. And, finally, the central issue in the present case was the defendant’s asserted defense of consent, which was also the central issue in Lucas. If evidence concerning consent in the former is “indispensable to the central dispute,” so it must be in the latter.
So, it bears emphasizing that even though the evidence in Lucas was clearly “highly relevant, non-cumulative, and indispensable to the central dispute in a criminal trial,” see Maj. Op. at 289, the Lucas Court did not hold — and did not even suggest — that the defendant therefore had some over-arching constitutional right to “put [that evidence] before the jury,” see Maj. Op. at 288. In fact, the Lucas Court implicitly rejected any such right, holding instead that the defendant’s “[f]ailure to comply with [the notice] requirement may in some cases justify even the severe sanction of precluding]” such highly relevant, non-cumulative, and indispensable evidence. See Lucas, 500 U.S. at 153, 111 S.Ct. 1743. It is perhaps just as important that the Lucas Court expressly left it to the Michigan courts to decide “whether, on the facts of this case, preclusion [of the propensity evidence] violated Lucas’ rights under the Sixth Amendment.” See id. The majority notes that “rape shield laws, including Michigan’s, almost universally except from this rule evidence regarding prior sexual activity between the complainant and the defendant, precisely because that evidence carries heightened relevancy due to its increased similarity to the instance of the alleged rape.” Maj. Op. at 286 (emphasis in original). But in Lucas, it was exactly that type of sexual-history evidence that had been precluded.
So, the clear implication of Lucas is that the trial court can, without running afoul of the Constitution, exclude highly relevant, non-cumulative, and indispensable evidence from a criminal defendant’s trial. That is, Lucas clearly demonstrates that a court can constitutionally exclude such evidence on the basis that the defendant’s attorney failed to comply with the statute’s notice requirement. Therefore, the right (such as it is) to put that evidence before the jury is not grounded in the Constitution, but is instead grounded in state law or the state’s proper application of that law. Cf. Dist. Atty.'s Office for the Third Judicial Dist. v. Osborne, 557 U.S. -, 129 S.Ct. 2308, 2320, 174 L.Ed.2d 38 (2009) *296 (holding that there is no stand-alone constitutional right to access evidence for purposes of DNA testing, there is at most a constitutional right to the proper application of a state-created right).
The majority’s proposition cannot survive Lucas. While the Supreme Court has left its Sixth Amendment analysis unarticulated post-L^cas, it is evident from the foregoing that whatever the proper analysis may be, the majority’s (unprecedented) proposition does not conform to it.
2.
The majority’s holding is premised on Crane v. Kentucky, 476 U.S. 683, 684, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), a case in which a 16-year-old defendant was implicated in the murder of a liquor store clerk and signed a confession at the police station. At the boy’s trial, the court refused to admit evidence about the circumstances surrounding his confession — “that he had been detained in a windowless room for a protracted period of time ... surrounded by as many as six police officers ..., that he had repeatedly requested and been denied permission to telephone his mother, and that he had been badgered into making a false confession.” Id. at 685, 106 S.Ct. 2142. The jury convicted him of the murder and the court sentenced him to 40 years in prison. Id. On appeal to the Supreme Court, the Court reversed the conviction on constitutional grounds. Id. at 687, 106 S.Ct. 2142.
The Court explained that, while a pretrial confession is “not conclusive of guilt,” it certainly changes the complexion of the defense and invariably raises “the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?” Id. at 689, 106 S.Ct. 2142. Thus, the Court explained, such “a defendant’s case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.” Id.
This simple insight is reflected in a federal statute, 18 U.S.C. § 3501(a), the Federal Rules of Evidence, Fed. Rule Evid. 104(e), and the statutory and decisional law of virtually every State in the Nation [citations omitted]. We recognize, of course, that under our federal system even a consensus as broad as this one is not inevitably congruent with the dictates of the Constitution. We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive, only marginally relevantf,] or poses an undue risk of harassment, prejudice, or confusion of the issues. Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability — even if the defendant would prefer to see that evidence admitted. Nonetheless, without signaling any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures, we have little trouble concluding on the facts of this case that the blanket exclusion of the proffered testimony about the circumstances of petitioner’s confession deprived him of a fair trial.
Id. at 689-90, 106 S.Ct. 2142 (citations, quotation and editorial marks omitted; emphasis added).
*297 Thus, the clear proposition for which Crane stands is that when a criminal defendant, having signed a confession, nonetheless proceeds to trial, the Constitution guarantees that defendant the right to present evidence (i.e., the right to be heard) about the circumstances surrounding the confession, so that he may present a complete defense by challenging the credibility of that pre-trial confession. A broader application is not evident (or inevitable) from the text of the Crane opinion.
In Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) — a case the majority cites in support of Crane — the Supreme Court characterized Crane as a case about an “arbitrary” rule:
Another arbitrary rule was held unconstitutional in Crane v. Kentucky, [476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ]. There, the defendant was prevented from attempting to show at trial that his confession was unreliable because of the circumstances under which it was obtained, and neither the [Kentucky] State Supreme Court nor the prosecution ‘advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence.’ Id. at 691 [106 S.Ct. 2142].
Holmes, 547 U.S. at 326, 126 S.Ct. 1727. It is noteworthy that, although it cited Holmes, the majority here did not hold that the Michigan rape-shield statute is “arbitrary” or that the Michigan Court of Appeals failed to “advanee[] any rational justification” for its exclusion of the sexual propensity evidence.
The majority cites Crane as the “clearly established law” that the Michigan Court of Appeals “unreasonably applied” in this ease. See Maj. Op. at 288-89 (“We therefore conclude that the state appellate court’s determination on this issue was an unreasonable application of the principles set forth by the Supreme Court in Crane.”). That is, the majority views Crane — a decision that upheld a criminal defendant’s constitutional right to introduce evidence about the circumstances surrounding his own (allegedly coerced) pre-trial confession — as the “clearly established” or governing law on the constitutionality of a criminal defendant’s right to introduce evidence about the victim’s prior willingness to participate in certain private, potentially humiliating, sex acts, based on the defendant’s theory that her previous willingness would be indicative of her current willingness.
I do not agree that the majority’s rendition of Crane is or was “clearly established.” In my view, the majority has extended Crane well beyond any reading or application justified by the language of the opinion or any subsequent case. It is unfair to fault the Michigan Court of Appeals, as the majority does, for failing to anticipate this novel extension of Crane.
3.
The majority’s approach does not comply with the limitations of AEDPA. Under AEDPA, the phrase “unreasonable application of’ Supreme Court precedent means that the state court “identified] the correct governing legal principle from [Supreme Court] decisions but unreasonably applied] that principle to the facts” of the case. Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). But, “a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.” Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166,155 L.Ed.2d 144 (2003) (quoting Williams, 529 U.S. at 411, 120 S.Ct. 1495). Even “a firm conviction that the state court was erroneous” is *298 not enough. Id. at 75, 123 S.Ct. 1166 (quotation marks omitted; emphasis added). Rather, “[t]he state court’s application of clearly established law must be objectively unreasonable.” Id. at 76, 123 S.Ct. 1166 (emphasis added); see also Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 747, 169 L.Ed.2d 583 (2008) (“Because our cases give no clear answer to the question presented, let alone one in [petitioner]’s favor, it cannot be said that the state court unreasonably applied clearly established Federal law.” (quotation marks and citations omitted)).
A review of the Michigan Court of Appeals’ decision reveals that its application, far from being “objectively unreasonable,” was eminently reasonable. The court explained its approach:
Evidence of specific instances of a victim’s past sexual conduct with others is generally legally irrelevant and inadmissible under the rape-shield statute, M.C.L. § 750.520j. In certain limited situations, evidence that does not come within the specific exceptions of the statute may be relevant and its admission required to preserve a criminal defendant’s Sixth Amendment right of confrontation. .,.
Inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. Application of the rape-shield statute must be done on a case-by-case basis, and the balance between the rights of the victim and the defendant must be weighed anew in each case. In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant’s sexual conduct where its exclusion would not unconstitutionally abridge the defendant’s right to confrontation.
Michigan v. Swathwood, No. 235540 & 235541, 2003 WL 1880143, *1 (Mich.App. Apr.15, 2003) (citations and quotations marks omitted). The court considered the evidence and, concluding that evidence of Ms. Clark’s propensity to participate in certain sex acts was not probative of whether she consented to the acts complained of in the present case, affirmed the trial court. Id. at *2-4.
I cannot agree that the Michigan Court of Appeals’s application of the governing principles was “objectively unreasonable.” It appears to me that the majority does not dispute the state court’s application of the law so much as it simply disagrees with either the Michigan legislature’s policy determination about the relevance of this propensity evidence or with the state court’s measure of the probity or relevance of this evidence. Neither is a proper basis for habeas relief.
4.
It is commonly understood that the uncorroborated testimony of a rape victim is sufficient to support a conviction. See Tibbs v. Florida, 457 U.S. 31, 45 n. 21, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Brown v. Davis, F.2d 1142, 1144 (6th Cir.1985) (holding that the testimony of a single, uncorroborated rape victim is sufficient to support conviction); Michigan v. Whittaker, 2007 WL 914342, *5 (Mich.App. Mar.27, 2007) (“Indeed, in cases of sexual assault, a conviction may ‘be based upon the uncorroborated testimony of the woman assaulted.’ ”) (quoting Michigan v. Miller, 96 Mich. 119, 55 N.W. 675, 676 (1893)); M.C.L. § 750.520h (“The testimony of a victim need not be corroborated in [rape and sexual assault] prosecutions under sections 520b to 520g.”). But, the majority is not so easily persuaded.
The defense’s theory was that Clark consented to the activities of July 3, but *299 it had only the Tony’s Lounge incident as evidence that she may have done so. In our view, the exclusion of the evidence of the group sexual activity with Bermudez and the invitation to Gagne’s father were indispensable to the jury’s ability to assess the likelihood of this theory. We cannot accurately portray the extent of Gagne’s interest in presenting this evidence without reference to the lack of other evidence in this case. Other than the two defendants and the complainant, there were no eyewitnesses at all. Nor did the physical evidence tend weigh in favor of one side or the other. In short, the excluded evidence was not just relevant to this case, it was in all likelihood the most relevant evidence regarding the sole contested issue at trial — an issue about which there was not much evidence in the first place. We believe it was indispensable to the defense’s theory....
Maj. Op. at 287-88 (paragraph break and footnote omitted).
First, let’s be very clear about what the majority means when it says “evidence of the group sexual activity with Bermudez and the invitation to Gagne’s father.” This “evidence” is simply Gagne’s uncorroborated testimony about these alleged incidents. No one contends that either Bermudez or Gagne’s father was prepared to testify about these incidents, or that there was any other “proof.” And Clark was prepared to refute these accusations, had Gagne been allowed to raise them.
And, it bears emphasizing that the defense did not have “only the Tony’s Lounge incident as evidence” that “Clark consented to the activities of July 8”; the defense had testimony by both Gagne and Swathwood — which is twice as much testimony as a rape defendant would typically have — and an opportunity to cross-examine the sole complainant, Pamela Clark. Moreover, the “lack of other evidence” did not hinder Gagne’s defense; if anything it hindered the prosecution, whose burden it was to prove the offense beyond a reasonable doubt.
So, the majority is really saying that despite the absence of physical evidence, and despite Gagne’s and Swathwood’s consistent testimony that Clark consented, and despite their consistent testimony about the Tony’s Lounge incident, and despite defense counsel’s opportunity to cross-examine Clark at length — Gagne’s self-serving and unverifiable testimony about those two other past, unrelated incidents of sexual debauchery on the part of his accuser, Pamela Clark, was “indispensable to the jury’s ability to assess the likelihood” that she had consented to the far more violent and humiliating form of sexual debauchery with Gagne and Swath-wood on the night in question. The majority contends: “the excluded evidence was not just relevant to this case, it was in all likelihood the most relevant evidence regarding the sole contested issue at trial,” consent.
So, the majority’s position is that “the most relevant evidence” in a rape trial, the “indispensable” evidence, is the perpetrator’s testimony about the victim’s promiscuity or prior sex acts. And this, according to the majority, is because a rape defendant has a constitutional right to prove present consent by producing evidence of past willingness, at least insofar as the defendant can characterize that evidence as highly relevant, noncumulative, and central to the dispute.
I disagree and find that I am not alone. In Sandoval v. Acevedo, 996 F.2d 145, 147-48 (7th Cir.1993), the Seventh Circuit decided a case in which the defendant — accused of forcibly sodomizing his ex-girlfriend — sought to introduce testimony by other men that she had enjoyed anal inter *300 course with them in the past, thus demonstrating her propensity for it. The court explained:
The essential insight behind the rape shield statute is that in an age of post-Victorian sexual practice, in which most unmarried young women are sexually active, the fact that a woman has voluntarily engaged in a particular sexual activity on previous occasions does not provide appreciable support for an inference that she consented to engage in this activity with the defendant on the occasion on which she claims that she was raped. And allowing defense counsel to spread the details of a woman’s sex life on the public record not only causes embarrassment to the woman but by doing so makes it less likely that victims of rape will press charges.
Id. at 149. The Seventh Circuit continued:
The fact that [she] had had pleasurable anal intercourse with another man on another occasion would not show that she would have enjoyed having it with Sandoval on an occasion when he was enraged and wanted by penetrating her anally to humiliate and, quite possibly, physically hurt her. Indeed, by that logic rape shield laws would be unconstitutional to the core because their central aim is to prevent the drawing of an inference of consent from previous con- • sensual intercourse with other men.
Id. at 151.
[E]ven without a rape shield law it is doubtful that testimony that she had enjoyed it with another man would be admissible, for it doesn’t, or at least shouldn’t, require a rape shield law to show that consent to sex with X on one occasion is not good evidence of consent to sex with Y on another.
Id. To extend this basic reasoning to the present case: it shouldn’t require a rape shield law to show that consent to sex with X and Y on one occasion is not good evidence of consent to sex with X and Z on another. But, as so many states have discovered, it does require a rape-shield law, because too many people — like the majority here — succumb to the “propensity evidence” problem.
There is, to be sure, a commonplace assumption behind propensity evidence: If she did it before, she’s more likely to have done it again. Cf., e.g., Old Chief v. United States, 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); Fed.R.Evid. 404(b). And there is a peculiar aspect to propensity evidence in rape cases, in which evidence of the victim’s sexual predilections — e.g., a propensity for sexual willingness — has historically been considered indicative of whether the victim consented to the incident in question. See Fed.R.Evid. 412. And this is an assumption that the Michigan legislature (like many others across the country) was attempting to overcome by enacting its rape shield statute.
The Michigan legislature has declared such evidence generally inadmissible as a matter of public policy: that rape victims should be encouraged to report and prosecute rapes without fear that private, potentially embarrassing, incidents from them past will become the centerpiece of the ensuing trial. The majority disagrees and holds that the rape-shield statute is no bar to evidence of a rape victim’s promiscuity or prior willingness to engage in sexual debauchery, if that evidence is “highly relevant, noncumulative, and indispensable to the central dispute in a criminal trial.”
But, as the Seventh Circuit stated so cogently, “by that logic rape shield laws would be unconstitutional to the core,” see Sandoval, 996 F.2d at 151, inasmuch as the very purpose of a rape-shield statute is to exclude, on policy grounds, evidence that is almost always highly relevant, non-cumula *301 tive, and indispensable to the central dispute in a criminal trial. If the majority wants to hold that rape-shield statutes are unconstitutional, it should do so forthrightly. At least, that way, we would have the issue front and center, with an opportunity for debate and dissent.
B.
I cannot agree that the Michigan Court of Appeals unreasonably applied any clearly established law, and I cannot join the majority opinion which, in effect, invalidates all rape shield laws as violative of the Sixth Amendment. Therefore, I respectfully dissent. I would reverse the district court’s judgment and deny the petitioner’s request for habeas relief.

. See Fed.R.Evid. 412 (108 Stat.1919, eff. Sept. 13, 1994); Term. R. Evid. 412 (adopted July 1, 1991, to replace T.C.A. § 40-17-119); Ky. R. Evid. (1990 c. 88 § 22, eff. Mar. 16, 1990); Ohio Rev.Code § 2907.02(D) (1975 S. 144, eff. Aug. 27, 1975); Mich. Comp. L. § 750.520j (P.A.1974, No. 266 § 1, eff. Apr. 1, 1975).